**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**HILARIO CAMPOS**, *individually and as parent and*
*guardian of minor children Maria Campos, Eve Campos*
*and Angel Campos, and as next of kin of*
*Christopher Campos (deceased), and Hilario*
*David Campos, Jr.*,                                                        Civ. No. 9:07-CV-1263
                                                                                          (FJS/RFT)
                                                      Plaintiff

                 - v -

EVELYN WEISSMAN, M.D.; L. TICHENOR, P.A.;
COMMISSIONER GLENN S. GOORD; LESTER N.
WRIGHT, M.D.; SUPERINTENDENT ROY
GIRDICH;[1] and JANE DOE NOS. 1-6,

                                               Defendants.


**APPEARANCES:**                                        **OF COUNSEL:**

OFFICE OF CRAIG J.J. SNYDER, PC                         CRAIG J.J. SNYDER, ESQ.
Attorney for Plaintiffs
17 Grandview Street
East Stroudsburg, PA 18301

HON. ANDREW M. CUOMO                                    CHRISTOPHER W. HALL, ESQ.
Attorney General of the State of New York               Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

---

[1] The Docket Report lists Superintendent Robert K. Woods as an unserved Defendant in this action, however, by their Amended Complaint, filed as of right on March 12, 2008, Plaintiffs substituted Superintendent Roy Girdich for Superintendent Woods. Dkt. No. 8, Am. Compl. On July 15, 2008, Mr. Girdich filed an Answer, along with the other identified Defendants, though the Docket Report was mistakenly not corrected. Dkt. No. 15, Ans. Plaintiffs have never identified the Jane Doe Defendants; dismissal of these unidentified, unserved Defendants is appropriate. *See infra* Part II.B.

**<u>REPORT-RECOMMENDATION AND ORDER</u>**

Plaintiffs are the parent and siblings of Christopher Campos, a nineteen-year-old inmate who died while in the care and custody of New York's Department of Correctional Services (DOCS).  Dkt. No. 8, Am. Compl.  Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 on their own behalf, claiming that Defendants, who are employees of DOCS, violated their First and Fourteenth Amendment rights when they deprived them of their protected interests in their association, companionship, and relationship with the deceased.  Plaintiffs also bring this action on Christopher Campos's behalf claiming Defendants violated his Eighth and Fourteenth Amendment rights when they were deliberately indifferent to his serious medical needs.  *See generally* Am. Compl.  Presently pending is Defendants' Motion for Judgment on the Pleadings, Dkt. No. 21, which Plaintiffs oppose, Dkt. No. 25.  As explained below, it is recommended that Defendants' Motion be **granted** and the entire action be **dismissed**.

## I.  BACKGROUND

For the purposes of this Motion, allegations of fact contained in the Amended Complaint are taken as true.  *See infra* Part II.A.  Christopher Campos was a nineteen-year-old man who died from a seizure disorder on December 10, 2004, while incarcerated at Upstate Correctional Facility.[2]  Am. Compl. at ¶ 15.  At the time of his original incarceration on February 26, 2003, Christopher was taking Tegretol, a medication prescribed to treat his severe seizure disorder, an impairment he suffered from since he was six years old.  *Id*. at ¶ 16.  On or about July 26, 2004, Christopher was transferred to

---

[2] By way of background, the Court takes judicial notice that Campos was received into DOCS custody on February 26, 2003, after having been convicted in Queens County of Attempted Assault in the Second Degree; his sentence included an indeterminate term of one to three years incarceration.  *See* NYSDOCS Inmate Locator Website, *available at* http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ1/WINQ000, (last visited August 24, 2009) (information for Inmate Christopher Campos, 03-R-1093, deceased).  At the time of his untimely death, Campos had served almost two years of that sentence.

Upstate Correctional Facility.  *Id*. at ¶ 18.  On September 21, 2004, a neurologist examined Christopher and determined that his seizures were not controlled and he should receive long-term medical testing at Albany Medical Center.  *Id*. at ¶ 19.

On November 30, 2004, Christopher was admitted to the Epilepsy Monitoring Unit at Albany Medical Center; he was discharged about one week later on December 6, 2004.  *Id*. at ¶ 20.  Upon his discharge, Albany Medical physicians directed that Christopher be required to take Carbatrol, the generic equivalent of Tegretol.  *Id*.

Christopher was returned to Upstate on the afternoon of December 6, 2004, but was not administered Carbatrol.  *Id*. at ¶ 21.  The following day, on December 7, 2004, Defendant L. Tichenor, a physicians' assistant at Upstate, ordered that Christopher's Carbatrol be discontinued and directed that he be returned to a single cell.  *Id*. at ¶¶ 9 & 21.

On December 8, 2004, Christopher ate no meals and was seen at sick call, where his request for seizure medication was denied.  *Id*. at ¶ 22.  Again, on December 9, 2004, Christopher ate nothing; an unidentified corrections officer made an emergency call and reported that Christopher was located half-way under the bed.  *Id*. at ¶ 23.  Defendant Jane Doe No. 1 observed Christopher through the window of the cell, but did not examine him.  *Id*.  Christopher again requested seizure medication, but his request was, again, denied.  *Id*.

On December 10, 2004, in the early hours of the morning, an unidentified corrections officer reported that Christopher had possibly suffered a seizure.  *Id*. at ¶ 24.  Defendant Jane Doe No. 2 observed Christopher through the window of the cell, but did not examine him.  She told him to notify corrections officers if he had a recurrence of symptoms.  *Id*.

At approximately 7:45 a.m., an unidentified corrections officer again notified medical personnel

that Christopher was unresponsive; upon examination, a nurse confirmed this and had Christopher transferred to the infirmary via a stretcher. *Id*. at ¶ 25.  Upon arrival at the infirmary, Defendant Evelyn Weissman, M.D., a physician employed at Upstate, examined Christopher and stated that he was "faking and acting like a child holding his breath." *Id*. at ¶¶ 8 & 26.  Dr. Weissman ordered that Christopher receive the same seizure medication he had received prior to his hospitalization at Albany Medical Center. *Id*. at ¶ 26.

At 9:45 a.m., Christopher had a seizure. *Id*. at ¶ 27.  Dr. Weissman did nothing to treat him. *Id.*  From 8:30 a.m. to 1:22 p.m., Christopher was placed in a locked room where his vital signs were checked once. *Id*. at ¶ 28.  When unidentified corrections officers contacted Dr. Weissman concerning Christopher's condition, she retorted that he was malingering. *Id*.

At 1:22 p.m., Defendant Jane Doe No. 3 noticed through the window of Christopher's room that he appeared not to be breathing. *Id*. at ¶ 29. CPR was commenced and Christopher was transferred by ambulance to Alice Hyde Hospital Emergency Department. *Id*.  Christopher Campos was pronounced dead at 2:10 p.m. on December 10, 2004. *Id*.  An autopsy concluded that the cause of death was a seizure disorder. *Id*. at ¶ 30.

On December 4, 2007, three years later, almost to the day, Plaintiffs filed the instant civil rights Complaint through counsel.  Dkt. No. 1, Compl.  They later filed an Amended Complaint, on March 12, 2008, as of right prior to the filing of any responsive pleading or motion.  Dkt. No. 8, Am. Compl.; FED. R. CIV. P. 15(a)(1).  The case proceeded in accordance with General Order 25, and, after holding a Rule 16 Conference, this Court issued a Uniform Pretrial Scheduling Order setting forth the various deadlines for the litigation.  Dkt. Nos. 17 & 18.  Among such deadlines set was that for Amendment of Pleadings and Joinder of Parties, which was set for November 11, 2008.  Dkt. No. 18 at p. 2.  On

September 30, 2008, Plaintiffs requested an extension of the deadline for the joinder of parties and amendment of the complaint for the sole purpose of adding as a plaintiff "Hilario Compos as Administrator of the Estate of Christopher Campos (deceased)." Dkt. No. 19.  In his letter to the Court, counsel for Plaintiffs explained how he was retained by the Plaintiffs less than three days prior to the expiration of the relevant statute of limitations and has encountered "significant delay in having plaintiff Hilario Campos appointed Administrator of the Estate of Christopher Campos (deceased)." *Id*.  At that time, counsel anticipated that administration proceedings would be sufficiently completed by May 12, 2009, such that letters of administration could be presented to the Court in support of the request to amend.  *Id*.  Accompanying Plaintiffs' request was a stipulation signed by counsel for all parties whereby Defendants consented to the extension of the deadline while preserving their right to oppose the amendment when the time arose.  Dkt. No. 19-2.  In response to the extension request, this Court issued a Text Order, dated October 8, 2008, denying the relief sought.  Dkt. No. 20, Text Order. Essentially, it was the Court's view that such extension at that juncture was unnecessary as Hilario Campos was already a named party and any amendment would only serve to change the caption to reflect that he would also prosecute this matter on behalf of the decedent's estate.  *Id*.  We further advised that when the time came for the actual amendment, the parties should confer as to whether they could strike an accord for the amendment; if not, Plaintiffs should seek further court intervention. According to Plaintiffs' August 14, 2009 Status Report, Letters of Administration for the Estate of Christopher Campos have still not been issued.  Dkt. No. 27.

## II.  DISCUSSION

### A.  Standard of Review

"Judgment on the pleadings is appropriate where material facts are undisputed and where a

judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted).  In applying Rule 12(c), a court must utilize the same standard as that applicable to a motion under Rule 12(b)(6).  *The Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations contained in

a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiffs' Complaint.

### B.  John/Jane Doe Defendants

In their Original Complaint, filed on December 4, 2007 (Dkt. No. 1), and in the Amended Complaint, filed on March 12, 2008 (Dkt. No. 8), Plaintiffs name six John Does as Defendants.  To date, Plaintiffs have failed to identify these six John Doe Defendants.  Under FED. R. CIV. P. 4(c)(1),

the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[3]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id*.  Because they failed to timely identify and serve the John Doe Defendants, and because as outlined below, no cognizable cause of action is asserted herein, we recommend dismissal of all claims asserted against them. *Cooks v. Delpiano*, 2008 WL 4186337, at \*1 n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

### C.  Plaintiffs' Claims

No one can deny the tragedy of what transpired on December 10, 2004, when Christopher Campos lost his life.  Nor do we doubt the great suffering his family endures with the loss of their family member.  By this action, Christopher's family endeavors to bring civil rights claims on both their own and his behalf.  Many options for relief may have been at their disposal at one time or another in different courts.  Ultimately, they chose where and how to best pursue the relief sought.  Unfortunately, the route they selected in this Court is, under the current circumstances, bereft of a remedy.  As hard as it may be for the Plaintiffs to accept this Court's recommendation of dismissal herein, we must be true to the law, even when enforcement sometimes yields seemingly unfair results.

The Plaintiffs' claims are rather complex.  In their Amended Complaint, Plaintiffs note six separate claims for relief which can be delineated into two categories: 1) those claims asserted by Christopher's father and siblings on their own behalf (*see* Am. Compl. at ¶¶ 31-42, First, Second, and

---

[3] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

Third Claims); and 2) those claims asserted on Christopher's behalf (*see* Am. Compl. at ¶¶ 43-51, Fourth, Fifth, and Sixth Claims).  Even assuming that all of the facts as alleged are true, Plaintiffs are not entitled to relief on any of the asserted claims.[4]  We start with the claims asserted on Christopher's behalf.

### 1.  Christopher's Eighth Amendment Claims

By their Amended Complaint, Plaintiffs assert that Defendants violated Christopher's Eighth and Fourteenth Amendment rights when they were deliberately indifferent to his serious medical needs.[5]  Federal Rule of Civil Procedure 17 states that an action must be brought in the name of the real party in interest, including an administrator or guardian.  FED. R. CIV. P. 17(a)(1).  The determination of legal capacity to sue is governed by the law of the forum state: in our case, it is New York.  FED. R. CIV. P. 17(b).  It is generally recognized that "[i]f a person had a cause of action under § 1983, the cause of action survives for the benefit of that decedent's estate where applicable state law creates a right of survival;" under New York law, a personal injury claim, like one asserted under § 1983, would survive death.  *Trustees of Masonic Hall and Asylum Fund v. Leavitt*, 2006 WL 1686405, at *14

---

[4] In support of their opposition to Defendants' Motion, Plaintiffs urge this Court to take judicial notice of and consider additional evidence regarding the facts of their case.  Submitted for our review is the Final Report of the New York State Commission of Correction *In the Matter of the Death of Christopher Campos*, as well as a Consent Order, Consent Agreement and Order, and Statement of Charges *In the Matter of Louise Tichenor, R.P.A.  See* Dkt. No. 25-2, Craig J.J. Snyder, Esq., Certif., dated Feb. 9, 2009.  Those documents, however, only lend further substantiation to the travesty that was foisted upon Christopher on that dismal day in December 2004.  The Report does not add to the discussion of whether the rights asserted herein are cognizable; thus, we need not consider them in our discussion.  Some modicum of relief is nevertheless present with the knowledge that at least some justice was rendered in holding those accountable for Christopher's untimely demise.

[5] The three claims asserted on behalf of Christopher are as follows:

Fourth Claim –    Defendant L. Tichenor, P.A., in discontinuing Christopher's anti-seizure medication, acted with deliberate indifference to Christopher's serious medical needs.  Am. Compl. at ¶¶ 43-45.

Fifth Claim –    Defendant Evelyn Weissman, M.D., in failing to provide Christopher with "good and accepted medical care for his seizures, pseudo-seizures and resulting conditions," acted with deliberate indifference to Christopher's serious medical needs.  Am. Compl. at ¶¶ 46-48.

Sixth Claim –    Defendants Jane Doe Nos. 1-3, in failing to provide Christopher with acceptable nursing care, acted with deliberate indifference to Christopher's serious medical needs.  Am. Compl. at ¶¶ 49-51.

(N.D.N.Y. June 7, 2006) (citing, *inter alia*, *Johnson v. Morgenthau*, 160 F.3d 897, 898 (2d Cir. 1998)

& further quoting N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) ("No cause of action for injury to

person or property is lost because of the death of the person in whose favor the cause of action existed.

For any injury an action may be brought or continued by the personal representative of the decedent."));

*see also Barrett v. United States*, 689 F.2d 324, 331 (2d Cir. 1982) (actions arising under 42 U.S.C. §

1983 survive death).  While Christopher's § 1983 claims survive his death, it is settled law that only

his personal representative can assert such an action on his behalf.  *Johnson v. Morgenthau*, 150 F.3d

897, 898 (2d Cir. 1998).  According to New York law, a "personal representative is a person who has

received letters to administer the estate of a decedent.  The term ***does not*** include an assignee for the

benefit of creditors, or a committee, conservator, curator, ***custodian***, ***guardian***, trustee or donee of a

power during minority."  N.Y. EST. POWERS & TRUSTS LAW § 1-2.13 (emphasis added).  Because no

letters of administration had been issued at the time this action was commenced, and indeed they still

have not been issued (*see* Dkt. No. 27), Plaintiffs lack the legal capacity and standing to assert § 1983

claims on Christopher's behalf.  *See*, *e.g., Squires v. Nephrology Found. of Brooklyn, Inc.*, 1999 WL

1495421, at *2-3 (E.D.N.Y. Dec. 27, 1999) (citing, *inter alia*, N.Y. SURR. CT. PROC. ACT § 1301 for

the proposition that a voluntary administrator cannot enforce a claim for wrongful death); FED. R. CIV.

P. 17.  We therefore recommend that Plaintiff's Fourth, Fifth, and Sixth Claims be **dismissed**.

### 2. Christopher's Family Members' Intimate Association Claims

By their Amended Complaint, Hilario, Maria, Eve, Angel, and Hilario David, Jr., assert that

Defendants have deprived them of their constitutionally-protected liberty interest in their association,

companionship, and relationship with Christopher Campos as guaranteed by the First and Fourteenth

Amendments.[6]  Defendants assert that these claims are derivative and, in this regard, not cognizable

under § 1983.  Dkt. Nos. 21-7, Defs.' Mem. of Law, & 26, Defs.' Reply Mem. of Law.  Plaintiffs

counter that they are not asserting derivative claims, but instead, direct violations of their constitutional

rights.  Dkt. No. 25, Pls.' Mem. of Law.

It is clear that derivative claims, such as wrongful death and loss of consortium, are not

cognizable under § 1983 since such claims do not involve "an injury based on a deprivation of the

plaintiff's rights, privileges, and immunities."  *Shenk v. Cattaraugus County*, 2007 WL 2874427, at *6

(W.D.N.Y. Sept. 27, 2007) (quoting *Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir. 1990)

and further citing other district court cases within the Second Circuit for the proposition that a loss of

consortium claim is derivative and not cognizable under § 1983); *Pritzker v. City of Hudson*, 26 F.

Supp. 2d 433, 445 (N.D.N.Y. 1998) ("Loss of consortium is not an independent cause of action, but is

derivative. . . . [and s]ection 1983 does not support a derivative claim for loss of consortium.").  In

reviewing the Amended Complaint, we think it is quite clear that Plaintiffs did not intend to assert

derivative claims in any capacity, either through § 1983 or state law.  *See* Am. Compl. at ¶¶ 33, 34, 37,

38, 41, 42, 44, 45, 47, 48, 50, & 51 (specifying that all claims are brought pursuant to alleged violations

of the United States Constitution with citations to the relevant Amendments, *i.e.*, First and Fourteenth).

---

[6] The three claims asserted on behalf of the family members are as follows:

First Claim –    Defendants Evelyn Weissman, M.D., L. Tichenor, P.A., and Jane Doe Nos. 1-6 failed to provide adequate medical care to Christopher Campos from December 6, 2004, until his death on December 10, 2004.  Am. Compl. at ¶¶ 31-34.

Second Claim –  Defendants Commissioner Glenn S. Goord, Lester N. Wright, M.D., M.P.H., and Superintendent Roy Girdich individually or collectively failed to develop, implement, or approve treatment policies, procedures, or guidelines for the treatment of seizures or pseudoseizures during Christopher's confinement at Upstate in December 2004 that were consistent with good and acceptable medical and correctional standards.  Am. Compl. at ¶¶ 35-38.

Third Claim –   Defendants Commissioner Glenn S. Goord, Lester N. Wright, M.D., M.P.H., and Superintendent Roy Girdich individually or collectively created or allowed a policy or practice to continue that permitted medical or nursing personnel at Upstate to fail to monitor or treat patients with seizures or pseudoseizures.  Am. Compl. at ¶¶ 39-42.

Our interpretation of their pleading is substantiated by Plaintiffs' opposition to Defendants' Motion. Dkt. No. 25 at p. 10 ("Plaintiffs' claims are based upon their constitutional right, firmly rooted in the First, Fifth, and Fourteenth Amendments . . . . Defendants rely upon an incorrect labeling of plaintiffs' claims as 'derivative' . . . . [t]o the contrary, the plaintiffs, themselves, have a constitutional right to be free from governmental intrusion into their intimate relations."). Nevertheless, to the extent Plaintiffs are attempting to assert derivative claims, we agree that such claims must be **dismissed**.

But, our analysis of Plaintiffs' claims must proceed insofar as they attempt to assert direct claims on their own behalf regarding their constitutionally protected right to maintain certain intimate associations under the First and Fourteenth Amendments. It is on this complicated constitutional right that we focus the remainder of our attention.

The Supreme Court has acknowledged that citizens enjoy protected rights of intimate association in two distinct ways: (1) the right "to enter into and maintain certain intimate human relationships" without "undue intrusion by the State," (categorized as intimate association rights); and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion," (categorized as expressive association rights). *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984) (quoted in *Agostino v. Simpson*, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008)). The precise source of the right to intimate association remains unclear. *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) (noting that it is unclear from which amendment the right of intimate association is derived as it has not been "authoritatively determined"); *Oglesby v. Eikszta*, 2007 WL 1879723, at *10 (N.D.N.Y. June 28, 2007) ("[T]he source of a right to intimate association in the U.S. Constitution is anything but obvious."). Generally, courts faced with this issue seem to agree that intimate association

*-12-*

claims related to rights of speech and petition are analyzed under the First Amendment's Freedom of Association Clause, while claims related to familial relationships fall under the liberty interests protected by the Substantive Due Process component of the Fourteenth Amendment.  *Thompson v. Ashe*, 250 F.3d 399, 406-07 n.1 (6th Cir. 2001); *Garten v. Hochman*, 2009 WL 302267, at *6 (S.D.N.Y. Jan. 28, 2009) (intimate relationship claims with regard to parent-child relationships arise under the Fourteenth Amendment, not the First); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203, 208-09 n.2 (E.D.N.Y. 2002) ("[T]he freedom to associate guaranteed by the First Amendment protects association interests related to speech and petition[.]").  Relationships between children and parents, siblings, and spouses "receive the greatest degree of protection because they are among the most intimate of relationships."  *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002).

A major issue of contention amongst the parties is whether, in order to give rise to a protected liberty interest and state a valid claim for relief, the Plaintiffs need to allege that the Defendants undertook certain actions with the <u>intent</u> to interfere with the Plaintiffs' intimate familial relationships with their <u>adult</u> child/sibling, Christopher.  Though the Second Circuit has not definitively weighed in on this precise issue, virtually all other Circuits considering the issue have determined that, when family members have been deprived of an adult family member, a defendant's intent to interfere with the relationship is a necessary component to show a protected liberty interest existed in maintaining that relationship.  *Reasonover v. St. Louis County*, 447 F.3d 569, 585 (8th Cir. 2006) ("A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." (internal quotation marks and citation omitted)); *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) (overruling *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), insofar as "it recognized a constitutional right to recover for the loss of the companionship of an <u>adult</u> child when

that relationship is terminated as an incidental result of state action." (emphasis added)); *McCurdy v. Dodd*, 352 F.3d 820, 822 (3d Cir. 2003) ("[T]he Due Process Clause does not protect the interest of a parent in the companionship of his or her independent adult child."); *Butera v. Dist. of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("[A] parent does not have a constitutionally-protected liberty interest in the companionship of a child who is past minority and independent."); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (noting that a "section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort" and, so, "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members."); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) ("[B]ecause the Supreme Court has never extended the constitutionally protected liberty interest incorporated by the Fourteenth Amendment due process clause to encompass deprivations resulting from governmental actions affecting the family only incidentally, we decline to sanction such a claim at the present time."); *Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (declining to acknowledge a liberty interest where the governmental action wasn't "directly aimed at the relationship between a parent and a young child[,]" as opposed to "an incidental deprivation of the relationship"); *Trujillo v. Bd. of County Comm'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[A]n allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."). This issue has not been definitively decided in the Second and Fifth Circuits. *See, e.g., Irvin v. Foti*, 2000 WL 280026, at *4 (E.D. La. Mar. 13, 2000) (granting qualified immunity because no case controlling in the Fifth Circuit has "'clearly established' the right of recovery under section 1983 for intrusion upon relationship between a parent and her adult child. . . . either with or without a requirement of demonstrating intentional conduct"); *Molette v. City of*

*Alexandria*, 2005 WL 2445432, at *5-6 (W.D. La. Sept. 30, 2005) (following the Tenth Circuit decision in *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, which requires a showing of intentional interference); *see also Agostino v. Simpson*, 2008 WL 4906140, at *10 (noting the uncertainty in the state of the law with regard to intentional interference with relationship between a parent and adult child); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d at 208-13 (looking to other Circuits for guidance in the absence of clear direction from the Second Circuit). And, the Ninth Circuit appears to be the only Circuit where "intent" is not mandated.[7] *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Smith v. City of Fontana*, 818 F.2d 1411, 1417-18 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *see also Rentz v. Spokane County*, 438 F. Supp. 2d 1252, 1263-65 (E.D. Wash. 2006) (tracing the genesis and progression of the Ninth Circuit's view on this issue and applying such mandated authority with sober reservation).

In support of their claim that the element of intentional interference is unnecessary, Plaintiffs put a lot of stock in the Second Circuit's decision in *Patel v. Searles*, wherein the Second Circuit stated it had "never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association." 305 F.3d at 137. However, we read this statement as a commentary on the state of the law as of the date of that decision, not an indication of the Circuit's posture one way or another. In fact, the *Patel* Court declined to answer that question since the intent component was evident in the facts before them. *Id.* ("[I]n any event, [plaintiff] has alleged facts sufficient to prove that the [defendants'] conduct *was* intentionally directed at his family." (emphasis in original)). Though this question remains unanswered by the Second Circuit, district courts within our Circuit consistently follow the direction of virtually all other Circuit Courts and hold that when it

---

[7] The Ninth Circuit does not, however, appear to recognize a liberty interest in maintaining a sibling relationship. *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991).

comes to asserting claims of governmental interference with intimate familial relationships with an adult son/daughter/sibling, a plaintiff must allege that a particular defendant's actions were undertaken for the purpose of interfering with such relationship; without the intent component, courts have ruled that there is no constitutionally protected liberty interest in maintaining that adult relationship.  *See Laureano v. Goord*, 2007 WL 2826649, at *10 (S.D.N.Y. Aug. 31, 2007); *Busch v. City of New York*, 2003 WL 22171896, at *5 (E.D.N.Y. Sept. 11, 2003); *Pizzuto v. County of Nassau*, 240 F. Supp. 2d 203.

The cases cited by Plaintiffs regarding the inessentiality of the element of intent are not on point since many of those cases concern First Amendment associational rights, *i.e.*, governmental intrusion into a familial relationship as retaliation for a family member's exercise of his/her First Amendment rights.  Dkt. No. 25 at pp. 11-15 (citing *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (plaintiff alleged he was fired from his job due to his employer's annoyance with his wife's civil rights action) & *Sutton v. Vill. of Valley Stream*, 96 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (plaintiff alleged adverse employment action taken in retaliation for his father's political views)).  It is true that no element of intent was required in those cases, but not for the reasons propounded by Plaintiffs.  Instead, the courts analyzed those claims, and rightly so, pursuant to First Amendment analysis, *i.e.*, analyzing whether an adverse employment action occurred as retaliation for the exercise of a First Amendment right. Those cases are distinguishable from the present case as there is no allegation of retributory conduct aimed at Christopher, nor, for that matter, any allegation of anyone exercising their First Amendment rights.  Because of the lack of First Amendment expression, this case is more properly analyzed under the Fourteenth Amendment, which, as noted above, does not allow for a constitutionally protected liberty interest under the facts alleged.

Two other cases cited by Plaintiffs require further comment.  First, Plaintiffs cite to *Greene v. City of New York*, 675 F. Supp. 110, 115 (S.D.N.Y. 1987), in support of their contention that a specific intent to interfere is not required.  *Id.* at p. 13.  The *Greene* case, however, is outdated as it was decided in 1987; since that time, several Circuit Courts have spoken more clearly on this issue and appear to have gravitated into consensus.  Second, and more important, *Green*, in rejecting the 10th Circuit's posture in *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985), relied heavily on Ninth Circuit precedent and the Seventh Circuit's decision in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984).  The *Bell* case, however, has since been overturned by the Seventh Circuit and most courts reviewing the matter today follow the reasoning of *Trujillo*.  The Ninth Circuit appears to be the lone dissenter.[8]  This Court too is swayed more by the reasoning set forth in *Trujillo* as opposed to the Ninth's Circuit's stance.

The other case cited by Plaintiffs, worthy of a brief retort from the Court, is *Sykes v. McPhillips*. *Id.* at pp. 12-14.  The *Sykes* case concerned facts similar to those pled herein.  At oral argument, the plaintiffs defended against the pending dispositive motion by urging the court to follow the Second Circuit rulings in *Adler* and *Patel* and find that no allegation of intentional interference is required. *Sykes v. McPhillips*, Civ. No. 5:04-CV-0068 (DNH/DEP) (N.D.N.Y.), Dkt. No. 98, Tr. of Proceedings,

---

[8] It is worth noting that in the research conducted by the Court, it appears that the element of intent never seems to enter the Ninth Circuit's analysis.  In allowing constitutional claims of intimate association with adult children, the Ninth Circuit appears to have latched onto the reasoning set forth by the Seventh Circuit in *Bell*, notwithstanding that Circuit's specific rejection of that case.  *Ward v. City of San Jose*, 967 F.2d 280, 283-84 (9th Cir. 1991) (rejecting the reasoning set forth in *Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir. 1986) and *Truijillo v. Bd. of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985) in favor of the Ninth Circuit's ruling in *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) and the Seventh Circuit's ruling in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)); *see also Safouane v. Fleck*, 226 Fed. Appx. 753, 766 (9th Cir. 2007) (citing, *inter alia*, *Smith v. City of Fontana*, for the unqualified proposition that "parents have a constitutionally protected liberty interest in the companionship and society of his or her child").  At least one court within that Circuit has questioned the practicality of the Ninth Circuit's view.  *See Rentz v. Spokane County*, 438 F. Supp. 2d 1252, 1263-65 (E.D. Wash. 2006).

at p. 23.[9]  The Honorable David N. Hurd, United States District Judge, ruled from the bench that, though no specific allegation of intent was put forth, defendants were not entitled to summary judgment since their alleged actions "were likely to have the effect of ending the relationships." *Id.* at p. 28 (citing *Adler v. Pataki*, 185 F.3d at 43-44).  For the reasons stated above, we respectfully disagree with Judge Hurd's stance and believe that his reliance on *Adler* for the stated proposition is misplaced. Instead, we join those courts in finding that the Due Process Clause "only protects against *deliberate* violations of a parent's fundamental rights – that is, where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." *McCurdy v. Dodd*, 352 F.3d at 827-28 (emphasis added).  Without pleading the necessary element of intentional interference, Plaintiffs have failed to allege that they had a protected liberty interest in maintaining a relationship with their adult child/sibling.  Affording Plaintiffs "a constitutional due process right to recover against the state in these circumstances would create the risk of constitutionalizing all torts against individuals who happen to have families." *Russ v. Watts*, 414 F.3d at 790.  There are no allegations in the Amended Complaint which state that Defendants acted with the specific intent to deprive Plaintiffs of their intimate association with Christopher.  As such, we find that there is no recognized liberty interest at issue and so no plausible cause of action has been stated.  Accordingly, Defendants' Motion for Judgment on the Pleadings should be **granted.**

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the six unidentified, unserved John Doe Defendants be **dismissed** from this action pursuant to FED. R. CIV. P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is further

---

[9] The Court takes judicial notice of Judge Hurd's ruling as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  FED. R. EVID. 201(b)(2).

**RECOMMENDED**, that Defendants' Motion for Judgment on the Pleadings (Dkt. No. 21) be **granted** and this entire action be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   September 10, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge